FILED
DES MOINES, IOWA

02 AUG 12 PM 4: 04

SOUTHERN DISTRICT OF IA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| LINCOLN NATIONAL LIFE INSURANCE COMPANY and LINCOLN FINANCIAL ADVISORS CORPORATION, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> THOMAS W. PAYNE, <br><br> Respondent/Defendant. | CIVIL NO. 4-02-CV-70346 <br><br><br> PETITIONERS' BRIEF IN RESISTANCE TO RESPONDENT'S MOTION FOR STAY AND IN FURTHER SUPPORT OF PETITIONERS' MOTION FOR STAY |

Petitioners Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation ("Lincoln") filed a Motion for Stay of the concurrent state court proceeding on July 18, 2002. In response, Respondent Thomas W. Payne ("Payne") filed a Resistance to Petitioners' Motion for Stay and his own Motion to Stay this federal court proceeding. Pursuant to the Court's order dated July 31, 2002, Lincoln hereby submits its Brief in Resistance to Payne's Motion for Stay of the federal court proceeding and its Brief In Further Support of its Motion for Stay of the state court proceeding.



# TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 3

ARGUMENT .............................................................................................................. 4

I.      THE FEDERAL COURT ACTION SHOULD NOT BE STAYED. ................ 4

      A.     There Are No Exceptional Circumstances Which Overcome This
           Court's Duty to Exercise Jurisdiction. .................................................... 4

           1.     Whether the State Court Has Assumed Jurisdiction Over
                 Property. ....................................................................................... 6

           2.     The Relative Inconvenience of the Federal and State Forum. ..... 6

           3.     Desirability of Avoiding Piecemeal Litigation ........................... 6

           4.     The Order in Which Jurisdiction Was Obtained. ......................... 7

           5.     Whether Federal Law or State Law Provides the Rule of
                 Decision. ...................................................................................... 8

           6.     Whether the State Forum Will Adequately Protect the Interests
                 of the Parties............................................................................... 8

      B.     Analogous Cases Demonstrate That This Court Should Retain
           Jurisdiction. .......................................................................................... 9

II.     LINCOLN'S MOTION TO STAY THE STATE COURT PROCEEDING..... 10

CONCLUSION ......................................................................................................... 12

## BACKGROUND

Payne claims in his Motion for Stay that an action involving this subject matter has been pending in the Iowa District Court since October 19, 1998. Payne further states that "discovery and other activities were pursued in the state litigation until the parties made an agreement to arbitrate their dispute pursuant to the Code of Arbitration Procedures of the National Association of Securities Dealers, Inc." These statements are misleading and incomplete. The true procedural history of this matter is as follows:

a.      Payne initiated a lawsuit in the Iowa District Court on October 19, 1998.

b.      Lincoln filed its Answer and Affirmative Defenses on December 8, 1998. In its Answer and Affirmative Defenses, Lincoln immediately and affirmatively stated that the contracts between Payne and Lincoln contained a mandatory arbitration provision, and thus that Payne had no right to maintain his action in state court.[1]

c.      On February 17, 1999, because Payne had misguidedly filed a lawsuit in state court rather than initiate an NASD arbitration proceeding, Lincoln filed a Motion to Compel Arbitration and a Brief in Support of its Motion.

d.      Payne did not even file a Resistance to Lincoln's Motion to Compel Arbitration. Rather, Payne entered into an agreement to submit the matter to NASD arbitration, as required by his contract with Lincoln.

e.      Thus, for Payne to state in his Motion for Stay that this action has been pending in the state court since October 19, 1998, is misleading, because all that took

---

[1] Payne's NASD Form U-4, which was part of his contractual relationship with Lincoln, contained a mandatory arbitration provision, requiring that any disputes between him and Lincoln be submitted to NASD arbitration.

place was Payne filed a state court action in utter disregard and contravention of his contract with Lincoln and Lincoln took steps to move the matter to the proper forum (i.e., NASD arbitration).

f.     It is also misleading for Payne to state that "discovery and other activities were pursued in the state litigation," because this implies that all parties "pursued" discovery in the state court action. This is not the case. Payne filed written discovery requests on the Defendants on the same day he filed his Petition in the Polk County court. However, Lincoln refused to respond to these discovery requests until the matter was properly transferred to arbitration. Moreover, Lincoln, Burris and Crosby did not serve any discovery requests in the state court action.

## ARGUMENT

Payne argues that the federal court action should be stayed in order to promote judicial efficiency, avoid piecemeal litigation, and assure Respondent complete relief. Payne further argues that a stay of the state court litigation is unauthorized under the Anti-Injunction Statute, 28 U.S.C. §2283. Both arguments are factually and legally erroneous.

## I.     THE FEDERAL COURT ACTION SHOULD NOT BE STAYED.

### A.     There Are No Exceptional Circumstances Which Overcome This Court's Duty to Exercise Jurisdiction.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1982), the United States Supreme Court set forth the considerations that should inform a

federal district court's decision as to whether to refrain from exercising jurisdiction over an action that is pending before a state court.  The Supreme Court held that the federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by congress.  *Colorado River,* 424 U.S. at 817.  The Court further stated that the federal courts may abstain only in "exceptional circumstances," and that "only the clearest of justifications will warrant dismissal" of the federal court action in deference to a concurrent state court proceeding.  *Id.* at 817, 819.[2]

The Court then set forth factors to be considered by district courts in reaching a determination on these issues.  *Id.* at 817-21; *Moses H. Cone*, 460 U.S. at 15-16.  The Court stated that the balance of these factors is to be "heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone*, 460 U.S. at 16.

The factors that a district court should consider are:  (1) whether the state court has assumed jurisdiction over property, (2) the relative inconvenience of the federal and state forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which jurisdiction was obtained by the courts, (5) whether federal law or state law provides the rule of decision, and (6) whether the state forum will adequately protect the interest of the parties.  *Colorado River*, 424 U.S. at 817-21; *Moses H. Cone*, 460 U.S. at 23-27.  Here,

---

[2] The Court stated:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.  The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

Id. at 813.

the factors do not create an "exceptional circumstance" and do not overcome the "unflagging obligation" and "heavy weighting" in favor of federal court jurisdiction.

### 1.   Whether the State Court Has Assumed Jurisdiction Over Property.

There is no property at issue in this matter, and thus this factor is not applicable.

### 2.   The Relative Inconvenience of the Federal and State Forum.

Both the federal court and the state court in this matter are located in Des Moines, Iowa.  Moreover, all counsel of record are located in Des Moines.  Therefore, the federal court is no less convenient than the state court and, accordingly, this factor does not favor dismissal.  *See Huntsville Golf Development, Inc. v. Brindly Construction Company, Inc.,* 847 F.Supp. 1551, 1554 (N.D. Ala. 1993)(holding that the convenience factor did not favor dismissal where the federal court could convene in the same city as the state court and all counsel of record were located in the city in which the federal court sat).

### 3.   Desirability of Avoiding Piecemeal Litigation

Payne apparently argues that because he has moved to dismiss Burris and Crosby's claim for lack of jurisdiction, retention of jurisdiction by this Court over Lincoln's motion to vacate would create piecemeal litigation.  However, Lincoln submits that Payne's Motion to Dismiss Burris and Crosby's action will be denied.  In this respect, Lincoln hereby adopts, agrees with and incorporates by reference the arguments set forth in Burris and Crosby's Brief in Resistance to Payne's Motion to Dismiss.

In addition, even if Burris and Crosby's Application to Vacate is moved to state court, this does not warrant a dismissal or stay of Lincoln's federal court action.  Payne stated separate and distinct causes of action against Lincoln, Burris and Crosby.  While

the facts underlying these claims are very similar, there is no reason that a state court cannot determine the substance of Burris and Crosby's Application to Vacate while a federal court determines the substance of Lincoln's Application to Vacate. Therefore, this factor also does not weigh against the exercise of federal court jurisdiction.

### 4. The Order in Which Jurisdiction Was Obtained.

This factor is not "measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *See Moses H. Cone*, 460 U.S. at 21. Moreover, this factor is not to be determined by "a race to the courthouse." *See Johnston Lemon and Company, Inc. v. Smith*, 882 F.Supp. 4, 5 (D.C. 1995)(quoting *Klingenberg v. Bobbin Publications*, 530 F.Supp. 173 (D.D.C. 1982))(holding that a "race to the courthouse [was] not dispositive even when the actions were filed several weeks apart"). In addition, this factor also requires a consideration as to "whether the party availing itself of the federal forum should have acted earlier." *See Moses H. Cone*, 460 U.S. at 21-22.

Here, the NASD Code of Arbitration Procedure provides that an unsuccessful party has 30 days to pay an award unless it files a Motion to Vacate within that time period, and the Federal Arbitration Act grants an unsuccessful party three months to file a Motion to Vacate an arbitration award. 9 U.S.C. §12. Lincoln timely filed its Application and Motion to Vacate the Arbitration Award in the United States District Court for the Southern District of Iowa within 30 days after submission of the award. However, in an apparent "race to the courthouse," Payne filed his Application for Entry of Judgment in the Iowa District Court just 22 days after entry of the award.

No progress or action has occurred in the state court proceeding with respect to Payne's Application for Entry of Judgment.  In fact, the initial hearing in state court has been set for a date after the hearings in this Court.  Moreover, while the state court has entered no rulings on the post-arbitration motions, this Court has entered rulings on Petitioners' motion for extension of time to file brief and motion for leave to file overlength brief.  Therefore, this factor does not weigh against exercise of federal court jurisdiction.

**5.    Whether Federal Law or State Law Provides the Rule of Decision.**

Case law in this area holds that federal law governs issues relating to arbitration. *See TransSouth Financial Corp. v. Bell*, 149 F.3d 1292, 1295 (11th Cir. 1998)(holding that the Federal Arbitration Act governs motions to compel arbitration); *Huntsville Golf Development, Inc. v. Brindley Construction Company, Inc.*, 847 F.Supp. 1551, 1554 (N.D. Ala. 1993)(holding that federal law governs the issue of whether an arbitration award should be confirmed).  Therefore, this factor strongly supports the exercise of federal jurisdiction.  *See TransSouth*, 149 F.3d at 1295 ("resolution of the underlying dispute being governed by federal law is a factor that strongly suggests that a federal court should exercise its jurisdiction.").[3]

**6.    Whether the State Forum Will Adequately Protect the Interests of the Parties.**

"The fact that both forums are adequate to protect the parties' rights merely renders this factor neutral on the question of whether the federal action should be

dismissed.  This factor will only weigh in favor or against dismissal when one of the forums is *inadequate* to protect a parties' rights." *Noonan South, Inc. v. Volusia County*, 841 F.2d 380, 383 (11th Cir. 1988)(emphasis in original).

Here, both forums are adequate to protect the parties' rights, and Payne has made no showing that the federal forum is inadequate to protect his rights.  Therefore, this factor is neutral and does not weigh against the exercise of federal jurisdiction.

**B.     Analogous Cases Demonstrate That This Court Should Retain Jurisdiction.**

*Sunpoint Securities, Inc. v. Porta*, 192 F.R.D. 716 (M.D. Fla. 2000) is very similar to the case at bar.  There, an NASD arbitration award was entered on March 3, 1999, and the prevailing party (the defendant) filed a motion to confirm the award in state court on March 9, 1999.  *Id.* at 718.  Thereafter, on March 30, 1999, the unsuccessful party to the NASD arbitration (the plaintiff) filed a motion to vacate the award in federal court.  *Id.* The defendant moved to dismiss on the grounds that the federal court lacked jurisdiction due to the already pending state court action.  *Id.* at 720.  The court held this argument to be "without merit," ruling that "[a] pending motion to confirm award before a state court has no bearing on a federal court's jurisdiction to determine a motion to vacate that same award."  *Id.*

*Johnson Lemon & Co., Inc. v. Smith*, 882 F.Supp. 4 (D.D.C. 1995) also is very similar to the case at bar.  There, the plaintiff (an unsuccessful party to an NASD

---

[3] Even if state law governs the issue, this factor is not of great importance because "federal courts are accustomed to interpreting state law in diversity actions." *See Huntsville*, 847 F.Supp. at 1554.

arbitration) filed a motion to vacate the award in federal court several minutes after the defendant filed a motion to confirm in state court. *Id.* at 4-5. The defendant moved to dismiss or stay the federal court action, due to the prior-filed state court action. *Id.* The court reviewed the *Colorado River* and *Moses H. Cone* factors, and found that none "tips the balance in this case." *Id.* Therefore, the court denied the defendant's motion and retained jurisdiction, due to the fact that "the balance is to be heavily weighted in favor of the exercise of federal jurisdiction. *Id.* (quoting Moses H. Cone, 460 U.S. at 16).

Similarly, here, the *Colorado River/Moses H. Cone* factors do not support state court jurisdiction and certainly do not "tip the balance" against the heavy presumption of federal court jurisdiction. Therefore, as in *Sunpoint* and *Johnson*, this Court should retain jurisdiction of Lincoln's Application and Motion to Vacate.

## II.    LINCOLN'S MOTION TO STAY THE STATE COURT PROCEEDING.

Payne argues that a stay of the state court litigation is unauthorized under the anti-injunction statute, 28 U.S.C. §2283. However, the Anti-Injunction Act only applies to "proceedings in a state court." See 28 U.S.C. §2283. "What is required to constitute a non-enjoinable 'proceeding' under §2283 is the performance of 'judicial inquiry' by the state court, meaning the kind of conduct which 'investigates, declares, and enforces liabilities...'" *Big Apple Cookie Company v. Spring Water Cookie Company*, 517 F.Supp. 367, 370 (S.D. Ohio 1981)(quoting *Roudebush v. Hartke*, 405 U.S. 15, 21 (1972)). A court's function in simply recognizing the parties' agreement to arbitrate does not constitute a judicial proceeding. Id. at 371. As explained by the court in *Big Apple Cookie Company*:

> This is also an apt characterization of the Ohio common pleas court's duties in connection with the enforcement of private arbitration agreements. There is no investigation, declaration, or enforcement of liabilities by the state court under revised Code §2711.03. On the contrary, the common pleas judge's inquiry is limited to the existence of a sufficient arbitration agreement and to a determination that one or the other party thereto has not complied therewith. The matter concludes, with or without jury findings on these limited issues, with a "summary order" directing the parties to proceed to arbitration as agreed upon or by dismissal of the Petition. The state court judge's role in connection with the enforcement of private arbitration agreements is not enlarged, in a judicial-legal sense, by his issuing of discovery orders and the like.
>
> Whether deemed ministerial, administrative or something else, it is clear that the state court's duties in connection with the enforcement of arbitration agreements do not rise to the level of "judicial inquiry"....

Id. at 371.

Likewise, here, the Iowa state court's involvement in this matter did not rise to the level of a judicial proceeding. The court did not investigate, declare or enforce any liabilities. Rather, the court merely accepted the parties' agreement to arbitrate and stayed the state court action so that the matter could proceed to arbitration. Therefore, the action in the Iowa state court does not constitute a non-enjoinable proceeding under §2283.

Moreover, even if the state court action does constitute a "proceeding," the Federal Anti-Injunction Act sets forth three circumstances under which a federal court can enjoin a state court proceeding: (1) where there is an express congressional authorization to enjoin state proceedings, (2) where an injunction is necessary to protect a judgment that a federal court has rendered, and (3) where an injunction is necessary to aide the federal

court's jurisdiction over an action. See 28 U.S.C. §2283. Here, the Federal Arbitration Act expressly provides that for purposes of a motion to vacate or modify an arbitration award, the court may make an order "staying the proceedings of the adverse party to enforce the award." See 9 U.S.C. § 12.[4] Therefore, a stay of the state court proceeding is authorized by the Anti-Injunction Act.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Lincoln respectfully requests that the Court deny Payne's Motion for Stay and enter an order staying the concurrent state court proceeding.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.

By: *Todd Strother*

Denny M. Dennis  PK0001223
Todd A. Strother  PK0016680
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-2727
Phone: (515) 246-5889
Fax:  (515) 246-5808

ATTORNEYS FOR PETITIONERS/PLAINTIFFS

Copies to:

David L. Charles
Belin, Harris, Lamson & McCormick
Suite 2000 – Financial Center
Des Moines, IA 50309-3989

---

[4] A congressional authorization to enjoin state proceedings does not have to expressly refer to §2283 of the Anti-Injunction Act. *See Amalgamated Clothing Workers of America v. Richman Bros.*, 348 U.S. 511 (1955).

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by enclosing the same in an envelope addressed to each such attorney at his/her respective address as disclosed by the pleadings of record herein, with postage fully paid, and by depositing said envelope in a United States Post Office depository in Des Moines, Iowa on the 12 of _August_, 2002.